UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                    Case No. 16-20414

DEMARCO TEMPO, et al.,                      HON. AVERN COHN

    Defendants.
_____/

**MEMORANDUM AND ORDER DENYING DARIUS GORDON'S [1] MOTION TO SUPPRESS IDENTIFICATION TESTIMONY (Doc. 212)**

I.  Introduction

This is a criminal case.  Defendants are: (1) Demarco Tempo; (2) Haratio Heard; (3) Juwan Allen; (4) Darius Gordon; (5), Alvin Coates; (6) Javon Brown; (7) Greg Howard; (8) Dennis Jones; (9) Amacio Alexander; (10) Marcus Gilbert; (11) Kenneth Sadler; (12) Darreyl Coneal; and (13) Randy Stewart.

All of the defendants are charged with conspiracy to distribute heroin.  Other charges facing some defendants are: (1) death or serious bodily injury resulting from use of a controlled substance (enhanced penalty); (2) conspiracy to possess firearms in furtherance of drug trafficking; (3) distribution of a controlled substance resulting in serious bodily injury; (4) distribution of a controlled substances resulting in death; (5) distribution of a controlled substance; (6) possession of a controlled substance with intent to distribute near a school; (7) possession of a controlled substance with intent to

---

[1]Alvin Coates joins in the motion.

distribute; and (8) possession of firearm and ammunition by a convicted felon.  Some of the defendants have plead guilty and are awaiting sentencing.  Others have been sentenced.

On July 26, 2017, the Court held a hearing on several pending motions, including the motion by Darius Gordon to suppress identification testimony.  Gordon and Coats ask the Court to suppress past out-of-court and any future in-court identifications of them by the person identified in the Second Superseding Indictment as "Victim 3."  They argue that the procedures used were impermissibly suggestive and that the prior identification, on May 10, 2016, constitutes a due process violation.  They further contend that any in-court identification would be irredeemably tainted by the illegality of the May 10 identification.  The government says the identification was not unduly suggestive and is reliable.  For the reasons that follow, the motion is DENIED.

## II.  Background

The details of the interviews as explained at the hearing will be discussed later. What follows is background information from the parties' papers, particularly the government's response to the motion.

In the late winter and early spring of 2016, the community in Warren, Michigan experienced an increase in drug overdoses caused by heroin and fentanyl.  Warren police began an investigation into the Polo drug-trafficking organization which mostly involved interviewing confidential informants, overdose victims, other customers, and witnesses, as well as reviewing existing law enforcement information to gather intelligence about the Polo organization.  As of April 1, Warren police detectives had identified only Demarco Tempo, Haratio Heard, and Darreyl Coneal as suspected

members of the Polo Organization.  The police had photographs of each of them.

One adult woman, previously identified on the Second Superseding Indictment as Victim 3, overdosed twice, on March 17 and 31, 2016.  Her second overdose happened while she was being taken into custody for drug possession.

Victim 3 was interviewed twice, on April 1, 2016 and May 10, 2016.  At the April 1 interview, Victim 3 was shown photos of the only known suspects, Tempo, Heard, and Coneal.  Police did not have photos of Gordon or Coats at that time.  Victim 3 did not identify anyone.

After the April 1 interview, police were able to obtain photos of Gordon and Coats.  To identify additional suspects such as Gordon and Coats, Warren police officers conducted a series of undercover purchases from the Polo organization.  As members were photographed or video-recorded in connection with these buys, the detectives worked to identify them, including by sending their images to the Michigan State Police to be run through facial-recognition software.  Potential matches were confirmed by the undercover officer who had seen the members.  As previously unknown members of the Polo organization were identified, their photographs were added to the investigation's working photo book, consisting of a series of full-page, color photographs, with no identifying markers, that included both suspects and non-suspects ("fillers").  The photos were generally taken from mugshots.  The number of photographs changed over time, as more suspects were added.  All of the photos are of African-American men.

At the time of the May 10 interview, police had a mugshot type photo of Gordon.  Police had a photo of Coats which was not a mugshot.  Rather, the photo was taken outside, likely during an undercover purchase.  Both photos were part of the working

photo book.

### III. Legal Standard

A defendant seeking to suppress identification testimony under the due process clause must first establish that the identification procedures were unduly suggestive. See Neil v. Biggers, 409 U.S. 188, 198 (1972); United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992) (defendant's burden on this prong). If that showing is made, the inquiry shifts to whether, under a totality of the circumstances test, the identification is nonetheless reliable. See Biggers, 409 U.S. at 199-200.

The Court of Appeals for the Sixth Circuit as formulated a two-step test for determining whether pretrial identification testimony is admissible. "First, the defendant must show that the identification procedure was unduly suggestive." United States v. Sullivan, 431 F.3d 976, 985 (6th Cir. 2005). "If the defendant meets this burden, then the court must evaluate the reliability of the identification in the totality of the circumstances." Id.

Here, as will be explained, the photo lineup identification will not be suppressed because: (1) the photo array is not unduly suggestive; and (2) Gordon and Coats have not established that the remaining identifications are unreliable.

### IV. Discussion

#### A. Unduly Suggestive

##### 1. Legal Standard

Under the unduly suggestive prong, the Court must inquire whether the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." United States v. Meyer, 359 F.3d

820, 824 (6th Cir. 2004) (quotation omitted).

### 2. The Identifications

At the hearing, Detective Jonathan Pickett of the Warren Police Department testified that he and another Warren Police Department interviewed Victim 3 in the Macomb County Jail on April 1.  Detective Pickett further testified that Victim 3 was first told she was being interviewed as a victim, and her statements would not be used against her in court.  She was asked about her overdoses and her heroin source of supply, and gave additional information about the Polo organization, including locations and vehicles used by the organization.  Victim 3 said she had been a Polo organization customer for about a year and estimated more than a hundred transactions with them during that time.  She described herself as a heroin addict, with a $20 per day habit.

At the conclusion of the interview, Detective Pickett explained that Victim 3 was shown the three six-pack photo spreads, one at a time.  All of the photos, which were admitted at the hearing, are of African-American men.  Tempo, Heard, and Coneal were on separate sheets, along with five other non-suspect fillers.  Victim 2 was told that she might not know anyone shown in the pictures.  In the spread that included Tempo, Victim 3 identified the man next to Tempo as a "runner" she had seen in a Dodge Journey.  In the spread that included Heard, she identified the man next to Heard as a "runner" she had seen in a blue Buick.  In the spread that included Coneal, she identified no one.  The detectives did not give any feedback to her regarding her identifications.

Victim 3 also told the detectives that none of the photos shown to her depicted the men who had sold her the heroin that caused her overdoses on March 17 and 31. Victim 3 also did not provide detailed physical descriptions of any Polo organization members.

The second interview on May 10 took place at the Warren police headquarters. Victim 3 was not in custody. Detective Pickett testified that he the same other detective asked whether she had any new information about the Polo organization. Victim 3 said she did not. They showed her the investigation's photo book as it then stood, which included photos of Tempo, Heard, Coneal, Juwan Allen, Gordon, and Coates, interspersed with seven fillers, thirteen photos in total. The photo book was admitted at the hearing. Although the first photo is of Gordon, Detective Pickett explained that his practice was to have a filler as the first photo and insert suspect photos with filler photos. Thus, the arrangement of the photo book admitted at the hearing was not the same as the arrangement shown to Victim 3.

Detective Pickett further testified that Victim 3 reviewed the photographs one at a time. When she came to Gordon's photo, she immediately identified him as "Scarlip." When asked what she knew about him, she said she'd bought heroin from him around 200 times, including before both March 2016 overdoses. Victim 3 wrote notes on Gordon's photo which (1) identify him as a runner, (3) states that she made about 200 purchases from him, (4) provides two different locations of the purchases, and (4) sets forth the dates she overdosed.

Victim 3 continued looking through the photographs. She did not identify Tempo, Heard, or Coneal. She also did not identify Allen or any of the seven fillers. She did, however, identify Coates. Her handwritten notes on the photograph state that Coats was "usually with 'Scarlip' and I have bought from him but day of OD he was driving."

3.  Analysis

Gordon and Coats contend that both identifications were unduly suggestive because the photos were all of "drug dealers" and no effort was made to include photos who were not involved in the Polo organization. This argument is belied by the record. Both photo lineups included filler photos. Moreover, there is no evidence that Victim 3 was told the photos were of drug dealers.

Moreover, to the extent Gordon and Coats argue that the procedure used during the line up was suggested, they cannot prevail. The focus the inquiry is on the suggestiveness of arrangements made by law enforcement and the behavior of the officers, not on suggestiveness generally. See Perry v. New Hampshire, 565 U.S. 228, 248 (2012). The question is whether "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." Cornwell v. Bradshaw, 559 F.3d 398, 413 (6th Cir. 2009) (citing Wilson v. Mitchell, 250 F.3d 388, 397 (6th Cir. 2001)).

Here, the procedures were not used for the purpose of ascertaining which Polo organization members delivered overdose-causing drugs to Victim 3. Rather, the focus was the more general purpose of determining which, if any, members were known to Victim 3 and what she knew about them. Detective Pickett testified that he did not advise Victim 3 that the persons specifically involved in the deliveries that resulted in her overdoses were in the photo book. Rather, her identification of Gordon as one of these culprits was spontaneous and volunteered. He also testified that Victim 3 was positive in her identifications. Under the totality of the circumstances, the procedures used were not suggestive. See United States v. Smith, 459 F.3d 1276, 1294 (11th Cir. 2006) (identification procedures not unduly suggestive when officers asked only whether victim

could identify anyone in the pictures, not whether she could identify the suspect).

Finally, Gordon suggests that the procedure was suggestive because "only the added photographs [of Gordon and Coates] were of interest to the victim and no additional non-suspects were added to assure accuracy and reliability of the identification procedures." (Doc. 212 at p. 2). Not so. Gordon's picture was one of thirteen. Victim 3 had seen only three of the thirteen pictures before (Tempo, Heard, and Coneal). Seven of the ten new photos were of non-suspects Victim 3 had never seen. The Gordon photo was like the others, showing only his head and shoulders, with non-descript clothing, obscuring any differences in height, weight, or dress that could cause him to stand out.

In short, the Court fully credits Detective Pickett's testimony. There was nothing about the identification procedures used indicates that Victim 3 was steered by the detectives toward an identification of Gordon or Coates. Therefore, Gordon cannot meet his initial burden of demonstrating that the identification was unduly suggestive.

B. Reliability

1. Legal Standard

As noted above, a finding that a photo array is not unduly suggestive generally ends the inquiry. See United States v. Watson, 540 F. App'x 512, 515 (6th Cir.2013) ("If the defendant fails to show that the identification procedure was tainted by undue suggestiveness, our analysis ends."). Nonetheless, the Court will consider the reliability of the identifications for the sake of completeness.

Five factors are considered when determining the reliability of a pretrial identification: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention at the time of the observation; 3) the accuracy

8

of the witness's prior description of the criminal; 4) the level of certainty of the witness when confronted by the criminal; and 5) the length of time between the crime and confrontation.  Ledbetter v. Edwards, 35 F.3d 1062, 1071 (6th Cir.1994).

### 2.  Analysis

The circumstances of Victim 3's identification of Gordon and Coates weigh heavily in favor of reliability.  First, Victim 3 was involved in hand-to-hand transactions with both of them on multiple occasions over a period of up to a year.  Her attention during each encounter would have been focused on them.  The factors relating to opportunity to view, attention, and prior familiarity point in favor of reliability.

Victim 3 also described a distinctive facial feature of Gordon - a scar near his lip.  She called him "Scarlip."  She identified Coates as being with Scarlip and specifically recalling him driving on one of the days in which she overdosed.  As explained by Detective Pickett, Victim 3 did not hesitate to identify either Gordon or Coates and was absolutely certain in her identification.  Further, Victim 3 noted she had seen Gordon on March 31, which is close in time to her May identification.  Thus, the accuracy of her description, certainty of her identification, and the time between crime and identification all also weigh in favor of reliability.

SO ORDERED.

                                        S/Avern Cohn  
                                        AVERN COHN  
                                        UNITED STATES DISTRICT JUDGE

Dated: September 5, 2017  
       Detroit, Michigan